IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Bushnell Inc., et al., | |
| Plaintiffs, | |
| v. | Civil No.   09-cv-2009 KHV/JPO |
| The Brunton Company, et al., | |
| Defendants. | |

**PLAINTIFFS' REPLY TO ITS MOTION FOR LEAVE
TO FILE A FIRST AMENDED COMPLAINT**

Scott R. Brown (KS Bar No. 23395)
Jennifer C. Bailey (KS Bar No. 23446
Matthew B. Walters (KS Bar No. 23514)
HOVEY WILLIAMS LLP
10801 Mastin Boulevard, Suite 1000
84 Corporate Woods
Overland Park, Kansas 66210
Tel.  913-647-9050
Fax   913-647-9057
srb@hoveywilliams.com
jcb@hoveywilliams.com
mbw@hoveywilliams.com

ATTORNEYS FOR PLAINTIFFS
BUSHNELL INC. AND
LASER TECHNOLOGY, INC.

# TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. CHOICE OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. THE LTI PATENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A. Defendants Conflate the Standing Law for an Exclusive Versus a Non-Exclusive Licensee. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B. *Prima Tek* Does Not Hold That a Written Waiver Is Insufficient to Confer Prudential Standing, as Asserted by Defendants . . . . . . . . . . . . . . . . . . . . . . . . 2

        1. Differences Between a Non-Exclusive Versus an Exclusive Licensee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        2. Article III Standing and Prudential Standing in the Patent Context . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

            a. Article III Standing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

            b. Prudential Standing . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        3. Prima Tek's *Holding Is Inapposite* . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    C. Joinder of Kama-Tech Under Rule 19 Is Inappropriate. . . . . . . . . . . . . . . . . . . . 7

    D. Discovery of Kama-Tech Is Not a Factor in Deciding Prudential Standing or Joinder Under Rule 19. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    E. Plaintiffs Should Be Given the Opportunity to Join Kama-Tech in the Event This Court Finds Prudential Standing Lacking. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IV. THE '259 PATENT .................................................. 10

    A. Filing of an Amended Complaint Will Perfect Standing for Bushnell, Inc. in a Judicially-Efficient Manner and Will Not Prejudice Defendants. ........... 10

    B. Bushnell, Inc. Is Not Requesting Retroactive Standing as Asserted By Defendants. ............................................................. 11

    C. The Security Interests Listed on the Patent Office Website Do Not Affect Bushnell, Inc.'s Ownership in the '259 Patent. ................................ 12

V. CONCLUSION .................................................... 13

# TABLE OF AUTHORITIES

## Statutes & Rules

Rule 19, Federal Rules of Civil Procedure ................................. 7-9

Rule 19(a), Federal Rules of Civil Procedure ................................. 7

Rule 19(a)(1)(A), Federal Rules of Civil Procedure ........................... 7

Rule 19(a)(1)(B), Federal Rules of Civil Procedure ........................... 8

Rule 19(a)(1)(B)(i), Federal Rules of Civil Procedure ........................ 8

Rule 19(a)(1)(B)(ii), Federal Rules of Civil Procedure ....................... 8

## Cases

*Toxgon Corp. v. BNFL, Inc.*,
   312 F.3d 1379, 1380-81 (Fed. Cir. 2002) ................................. 1

*Abbot Labs. v. Diamedix Corp.*,
   47 F.3d 1128, 1131 (Fed. Cir. 1995) .................................. 4, 9

*Arachnid, Inc. v. Merit Indus., Inc.*,
   939 F.2d 1574, 1579, n.7 (Fed. Cir. 1991) ............................... 12

*Enzo APA & Son, Inc. v. Geapag A.G.*,
   134 F.3d 1090, 1092-94 (Fed. Cir. 1998) ................................. 11

*Independent Wireless Telegraph Co. v. Radio Corp. of America*,
   269 U.S. 459, 466-68, 46 S.Ct. 166, 169 (1926) ......................... 4, 6

*IpVenture, Inc. v. Prostar Computer, Inc.*,
   503 F.3d 1324, 1325 (Fed. Cir. 2007) ..................................... 4

*Kalman v. Berlyn Corp.*,
   913 F.2d 1473, 1480-81 (Fed. Cir. 1990) .................................. 4

*M.J. Madey v. Duke Univ.*,
    307 F.3d 1351, 1358 (Fed. Cir. 2002) .................................... 1

*Mas-Hamilton Group v. LaGard, Inc.*,
    156 F.3d 1206, 1210-11 (Fed. Cir. 1998) ................................ 11

*Messagephone, Inc. v. SVI Systems, Inc.*,
    243 F.3d 556 (Fed. Cir. 2000) (unpublished opinion) .................... 11

*Morrow v. Microsoft Corp.*,
    499 F.3d 1332, 1340-41, 1343-44 (Fed. Cir. 2007) ................. 2, 3, 5

*Ortho Pharm. Corp. v. Genetics Instit., Inc.*,
    52 F.3d 1026, 1031-32 (Fed. Cir. 1995) ............................ 2, 4, 6, 7

*Prima Tek II, L.L.C. v. A-Roo Co.*,
    222 F.3d 1372, 1374-75 (Fed. Cir. 2000) ............................. 2, 5-7

*Randolph-Rand Corp. of New York v. Shafmaster Co., Inc.*,
    No. CIV. 97-44-M, 1999 WL 814367 (D. N.H. April 8, 1999) ............. 10, 11

*Synopsys, Inc. v. Magma Design Automation, Inc.*,
    No. C-04-3923 MMC, 2006 WL 825277 (N.D. Cal. March 30, 2006) .......... 1, 8

*Unique Coupons, Inc. v. Northfield Corp.*,
    12 Fed. Appx. 928, 934 (Fed. Cir. 2001) ................................. 4

## I. INTRODUCTION

Defendants oppose the instant Motion to Amend and allege that it is futile in light of their Motion to Dismiss for lack of standing (D.N. 59). Defendants' various reasons for why the Court should dismiss this litigation do not survive even a cursory investigation, however. With respect to the four LTI Patents, the cases cited by Defendants are fundamentally inapposite to the standing issues underlying their futility arguments presented here and in their Motion to Dismiss. With respect to the '259 Patent, Plaintiffs' request to file an amended complaint is a judicially efficient option that rectifies any standing deficiencies – an option that does not prejudice the Defendants whatsoever. In fact, Plaintiffs cite a district court case in their brief that is directly on point, and even dismisses the exact arguments Defendants make in their reply to their Motion to Dismiss. Plaintiffs therefore request that Defendants Motion to Dismiss be denied, and Plaintiffs' Motion for Leave to Amend be granted.

## II. CHOICE OF LAW

As an initial matter, Defendants incorrectly assert that the law of the Federal Circuit applies to a district court's ruling on a motion to dismiss. The Federal Circuit has stated on many occasions that "for purely procedural issues in patent cases, such as dismissal of a complaint for lack of subject matter jurisdiction, law of the regional circuit applies." *Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379, 1380-81 (Fed. Cir. 2002); *M.J. Madey v. Duke Univ.*, 307 F.3d 1351, 1358 (Fed. Cir. 2002). It is notable that the only way that Defendants could distinguish one of Plaintiffs' cases cited in its opposition to the Motion to Dismiss, namely *Synopsys* (mentioned below), was to incorrectly argue that Federal Circuit law applies to a motion to dismiss for lack of subject matter jurisdiction. (See D.N. 59, p. 5).

1

## III. THE LTI PATENTS

### A. Defendants Conflate the Standing Law for an Exclusive Versus a Non-Exclusive Licensee.

Defendants incorrectly argue and apply standing law for a non-exclusive licensee to the facts of the present case, which involve an exclusive licensee. In the present case, Bushnell, Inc. is an exclusive licensee of the LTI Patents, which are co-owned by LTI and Kama-Tech. The question before the Court is whether Kama-Tech's written waiver to not "pursue or participate in any such litigation involving one or more of the Laser Range Finder Patents [the LTI Patents] and one or more of the Third Parties" is sufficient to confer **prudential** standing to LTI and Bushnell, Inc. for the LTI Patents. (D.N. 38, Ex. 3). In contrast, Defendants apply a Federal Circuit case, *Prima Tek*, involving a non-exclusive licensee and whether it has **Article III** standing. The Federal Circuit's rationale and holding in *Prima Tek* are fundamentally inapposite to the present facts, should not be used as a basis for dismissing the litigation regarding the LTI Patents, and do not make the Motion to Amend futile.

### B. *Prima Tek* Does Not Hold That a Written Waiver Is Insufficient to Confer Prudential Standing, as Asserted by Defendants.

#### 1. *Differences Between a Non-Exclusive Versus an Exclusive Licensee*

A patent license generally provides for two types of licensees: a non-exclusive licensee and an exclusive licensee. A non-exclusive licensee, by definition, does not have the ability to exclude anyone from making, using, or selling a product covered by the patent. Usually, a non-exclusive only has an affirmative right to make, use, or sell a product covered by the patent. If the non-exclusive licensee does not have the ability to exclude, the non-exclusive licensee does not have any "proprietary interest" in the patent. *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1340-41, 1343-44 (Fed. Cir. 2007); *Ortho Pharm. Corp. v. Genetics Instit., Inc.*, 52 F.3d 1026, 1031-32 (Fed. Cir.

2

1995) ("The proprietary rights granted by a patent are the rights to exclude others from making, using or selling the invention in the United States."). This is an important consideration with respect to Article III standing, as discussed below.

In contrast, an exclusive licensee, by definition, has the ability to exclude someone from making, using, or selling a product covered by the patent. There are two types of exclusive licensees: (1) an exclusive licensee with "all substantial rights" in the patent; and (2) an exclusive licensee with less than "all substantial rights." *Morrow*, 499 F.3d at 1339-40. For an exclusive licensee with "all substantial rights," the exclusive licensee is considered to be an "effective patentee" because the licensee holds all rights in the patent, except for ownership in name only. *Id.* at 1340, n.6. For an exclusive licensee with less than "all substantial rights," the licensee still has the ability to exclude, and therefore, the licensee has a proprietary interest in the patent; however, the exclusive licensee does not have all rights. *Id.* at 133-40. This is an important distinction with respect to prudential standing, as discussed below.

2. *Article III Standing and Prudential Standing in the Patent Context*

   a. **Article III Standing**

Article III standing in the patent context requires the classic "case or controversy" or harm to be redressed by the court. For a patent infringement plaintiff, this requires the plaintiff to have a proprietary interest in the patent, which necessarily requires the plaintiff to have the ability to exclude someone from making, using, or selling a product covered by the patent-in-suit. The rationale is that if the plaintiff does not have the ability to exclude, then the plaintiff would not otherwise have the ability to stop the infringement. Without the ability to stop the infringement, the putative plaintiff is not harmed from any infringement.

3

It follows that a non-exclusive licensee, who does not have any proprietary interest in the patent because it does not have the ability to exclude anyone from making, using, or selling, will never have Article III standing because it is not incurring a harm that the court can redress. *Ortho Pharm. Corp.*, 52 F.3d at 1031 ("A holder of such a nonexclusive license suffers no legal injury from infringement and, thus, has no standing to bring suit or even join in a suit with the patentee."); *Abbot Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1131 (Fed. Cir. 1995); *Kalman v. Berlyn Corp.*, 913 F.2d 1473, 1480-81 (Fed. Cir. 1990) (holding that a non-exclusive licensee has no standing to sue for infringement).

### b.  Prudential Standing

Prudential standing in the patent context is based on a policy of preventing multiple, and possibly inconsistent, lawsuits. *Independent Wireless Telegraph Co. v. Radio Corp. of America*, 269 U.S. 459, 466-68, 46 S.Ct. 166, 169 (1926); *IpVenture, Inc. v. Prostar Computer, Inc.*, 503 F.3d 1324, 1325 (Fed. Cir. 2007) ("Only the entity or entities that own or control all substantial rights in a patent can enforce rights controlled by that patent, lest an accused infringer be subjected to multiple suits and duplicate liability."); *Unique Coupons, Inc. v. Northfield Corp.*, 12 Fed. Appx. 928, 934 (Fed. Cir. 2001) ("The policy underlying the requirement to join the owner when an exclusive licensee brings suit is to prevent the possibility of two suits on the same patent against a single infringer.") (unpublished opinion). With this policy purpose in mind, whether a plaintiff has prudential standing is dependent on the type of proprietary interest held by the plaintiff. In the case of a patent owner who has exclusively licensed the patent, the necessary and indispensable parties for a patent infringement lawsuit, i.e., the parties that need to be joined in the litigation, differ depending on the proprietary rights held by the exclusive licensee.

For an exclusive licensee with "all substantial rights," the licensee need not join the patent owner, and may bring suit in its own name. The rationale is that all parties who could bring an infringement action against an infringer are parties in the litigation. Because the patent owner has licensed all its rights in the patent to the exclusive licensee with "all substantial rights," the patent owner could not otherwise bring an infringement action against the infringer. If there is no risk of multiple lawsuits, then the policy purposes underlying prudential standing are satisfied.

For an exclusive licensee with less than "all substantial rights," the general rule is that the exclusive licensee must join the owner(s) of the patent. *Morrow*, 499 F.3d at 1340. Otherwise, both the patent owner and the exclusive licensee could theoretically bring separate patent infringement lawsuits against the infringer. There are exceptions to this rule, however, if the "prudential concerns are not at play." *Id.*

### 3. Prima Tek's *Holding Is Inapposite*

Defendants' argument and cited cases requiring that *co-owners* of a patent must both join in a lawsuit to confer standing is grounded in considerations of prudential standing. A patent owner obviously has proprietary interests in a patent and meets all Article III requirements. *Prima Tek*, cited by Defendants as allegedly supporting dismissal of the litigation for the LTI Patents, is an **Article III** case involving a **non-exclusive** licensee. This is a significant factual distinction.

In *Prima Tek*, the owner of the patent, Southpac, licensed the patent to Prima Tek I. Prima Tek I in turn licensed the patent to multiple licensees. *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1374-75 (Fed. Cir. 2000). The license agreement between Southpac and Prima Tek I was quite restrictive as to the rights licensed to Prima Tek I. *Id.* at 1374-75, 1380. Additionally, it is notable

5

that Southpac granted Prima Tek I the right to sue infringers, and Southpac agreed to be bound by any infringement judgments. *Id.* at 1374-75.

After undertaking a fairly extensive analysis of the rights held by Prima Tek I, the Federal Circuit found that "it is clear that the right to exclude did not inure to Prima Tek I under the agreement with Southpac." *Id.* at 1380. Without the right to exclude, Prima Tek I was nothing more than a non-exclusive licensee, regardless of the nomenclature used in the license agreement. *Ortho Pharm.*, 52 F.3d at 1032 ("It is the licensee's beneficial ownership of a right to prevent others from making, using or selling the patented technology that provides the foundation for co-plaintiff standing, not simply that the word 'exclusive' may or may not appear in the license.").

The Federal Circuit then proceeded to determine whether Prima Tek I had standing to sue for patent infringement:

> Appellees [Prima Tek I, et al.] are correct that one of the underlying policies of the rule of *Independent Wireless* is to prevent duplicative litigation against a single accused infringer. This does not mean, however, that a patent owner's agreement to be bound by all judgments against a licensee, such as the one entered into by Southpac, necessarily resolves the issue of standing. Standing to sue for infringement depends entirely on the putative plaintiff's *proprietary interest* in the patent, not on any contractual arrangements among the parties regarding who may sue and who will be bound by judgments.

*Id.* at 1381 (internal citations omitted) (emphasis added). Although the Federal Circuit does not explicitly use the terminology "Article III" in the above-quoted analysis, the other terminology used, the analysis undertaken by the court prior to the above-quoted section, and the rationale for the holding each indicates that the court is discussing Article III standing – not prudential standing.

Specifically, the court notes the prudential policy concerns set forth in *Independent Wireless*. The court proceeds to state that regardless of the prudential policy concerns, standing is still

dependent on the "putative plaintiff's proprietary interest." Article III standing is the only standing that is dependent on the proprietary interest held by the plaintiff, i.e., whether the plaintiff has incurred a harm. In stating that a contract cannot confer standing, the court is holding that a contract is insufficient to confer Article III standing to a licensee who otherwise does not have any proprietary interest in the patent. No logical interpretation of the Federal Circuit's holding otherwise applies, and the holding, when viewed in the context of the Constitutional principles of Article III, is rationale and reasonable.

The court's holding is further elucidated by its discussion of *Ortho Pharm.*, which immediately follows the above-quoted section and which is also a case of a non-exclusive licensee. In *Ortho Pharm.*, the Federal Circuit stated that "[a] patentee may not give a right to sue to a party who has no proprietary interest in the patent." *Ortho Pharm.*, 52 F.3d at 1034.

In sum, *Prima Tek* stands for nothing more than a patent owner cannot contractually grant Article III standing to a licensee who does not have the ability to exclude others from making, using, or selling a product covered by the patent – a holding inapplicable to the facts of the present case.

**C.   Joinder of Kama-Tech Under Rule 19 Is Inappropriate.**

Fed. R. Civ. P. 19(a) defines who is a required party in litigation. The first prong, Rule 19(a)(1)(A), requires joinder of any person who "in that person's absence, the court cannot accord complete relief among existing parties." The present facts do not satisfy the first prong. Because Kama-Tech has waived any right to "pursue or participate" in patent infringement against the Defendants and on the LTI Patents, complete relief can be accorded in this litigation.

The second prong of Rule 19 requires joinder if the alleged indispensable person "claims an interest relating to the subject of the action" and either "impair[s] or impede[s] the person's ability

7

to protect that interest" or "leave[s] an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." FED. R. CIV. P. 19(a)(1)(B). First, Kama-Tech does not "claim[] an interest relating to the subject of the action." RULE 19(a)(1)(B). Although Kama-Tech has not given up its co-ownership of the LTI Patents, it has waived its interest with respect to the patents for these Defendants. Thus, with respect to the "subject of the action," Kama-Tech does not "claim[] an interest," as required by Rule 19. It necessarily follows that the Kama-Tech's "ability to protect that interest" is not being impeded. RULE 19(a)(1)(B)(i). Second, and as discussed above with respect to prudential standing, the Kama-Tech waiver removes the risk of multiple lawsuits against Defendants, on the LTI Patents, and on the present facts. RULE 19(a)(1)(B)(ii). *See also Synopsys, Inc. v. Magma Design Automation, Inc.*, No. C-04-3923 MMC, 2006 WL 825277 (N.D. Cal. March 30, 2006).

### D. Discovery of Kama-Tech Is Not a Factor in Deciding Prudential Standing or Joinder Under Rule 19.

Defendants argue that discovery of Kama-Tech will be difficult, and for this reason, the Court should dismiss the litigation without joinder of Kama-Tech. This argument cannot be the basis for dismissal for several reasons.

First, the perceived burden of discovery of an entity is not a factor on whether that entity must be joined to satisfy prudential standing or is an indispensable party under Rule 19. Defendants cite to no case that supports their argument. Additionally, Rule 19 does not identify the potential burden of discovery as a factor in determining whether a party should be joined in the litigation.

8

Second, Defendants have not identified any discovery they would need from Kama-Tech, nor have Defendants identified any burden other than a generalized concern.[1] Moreover, anything that Kama-Tech would have in the way of discovery, should such even exist, LTI would also have.

In sum, any difficulty in taking discovery of Kama-Tech, should there even be any, is not a factor in deciding dismissal of the litigation.

### E. Plaintiffs Should Be Given the Opportunity to Join Kama-Tech in the Event This Court Finds Prudential Standing Lacking.

Notwithstanding Plaintiffs strong belief that prudential standing is satisfied with respect to the LTI Patents, should the Court find otherwise, Plaintiffs should be given the opportunity to join Kama-Tech under Rule 19 as an involuntary plaintiff. The Federal Circuit has recognized on many occasions the ability to cure prudential standing defects post filing. *See, e.g., Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1133 (Fed. Cir. 1995) ("A patentee that does not voluntarily join an action prosecuted by its exclusive licensee can be joined as a defendant or, in a proper case, made an involuntary plaintiff if it is not subject to service of process.").

Therefore, leave to join Kama-Tech is respectfully requested in the event the Court finds that dismissal of the litigation involving the LTI Patents is appropriate absent Kama-Tech's presence. Accordingly, because LTI and Bushnell, Inc. otherwise have standing to sue on the LTI Patents, Plaintiffs' First Amended Complaint is not futile because there will still be an active lawsuit involving Plaintiffs.

---

[1] Discovery will adduce that Kama-Tech is only a holding company of the LTI Patents. It was not involved with the conception and reduction to practice of the invention. It does not manufacture the laser rangefinders sold by Bushnell, Inc. under the LTI Patents.

9

## IV. THE '259 PATENT

### A. Filing of an Amended Complaint Will Perfect Standing for Bushnell, Inc. in a Judicially-Efficient Manner and Will Not Prejudice Defendants.

Bushnell, Inc. requests leave to file a First Amended Complaint to perfect its standing for the '259 Patent. The patent was assigned to Bushnell, Inc. from its wholly-owned subsidiary, Bushnell Holdings Corporation, on May 7, 2009. Should the Court grant leave to amend, Bushnell, Inc.'s standing for the '259 Patent will be perfected as of filing of the First Amended Complaint.

Bushnell, Inc. has two options in perfecting its standing: (1) file the amended complaint; or (2) file a second patent infringement lawsuit and seek to consolidate that lawsuit with the present litigation. Allowing leave to amend is the most judicially-efficient option for the Court. As set forth in Bushnell, Inc.'s Opposition to Plaintiffs' Motion to Dismiss (D.N. 50, pp. 9-10), at least one other district court, on facts exactly on point with the present facts, allowed leave to amend to perfect standing. *Randolph-Rand Corp. of New York v. Shafmaster Co., Inc.*, No. CIV. 97-44-M, 1999 WL 814367 (D. N.H. April 8, 1999). In *Randolph*, the district court even noted the judicial efficiency of allowing leave to amend, as opposed to filing a second lawsuit and undertaking a consolidation request. *Id.* at *2.

Allowing leave to amend will also not prejudice Defendants in any respect. This case is at its early stages. Although there has been a considerable amount of evidence adduced regarding the request for preliminary injunction, Defendants have had a full and fair opportunity to be heard. Allowing leave to amend would not prejudice their rights and would move this case forward.

### B. Bushnell, Inc. Is Not Requesting Retroactive Standing as Asserted By Defendants.

The Assignment to Bushnell, Inc. is not retroactive, as asserted by Defendants, and does not conflict with the Federal Circuit's jurisprudence set forth in *Enzo* and its progeny. *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1092-94 (Fed. Cir. 1998); *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1210-11 (Fed. Cir. 1998); *Messagephone, Inc. v. SVI Systems, Inc.*, 243 F.3d 556 (Fed. Cir. 2000) (unpublished opinion). A retroactive assignment, otherwise known as a *nunc pro tunc* assignment, is, by definition, an assignment that has a retroactive start date. The May 7, 2009, Assignment transferring 100% ownership of the '259 Patent to Bushnell, Inc. has a start date of May 7th. Moreover, Bushnell, Inc. is not claiming perfected standing back to the filing of the original Complaint in January 2009; instead, standing will be perfected as of filing the First Amended Complaint, should the Court grant leave to file.

Defendants characterize the May 7th Assignment as retroactive so that it can rely on *Enzo*. (D.N. 59, p. 8). The Federal Circuit in *Enzo*, however, was concerned with conferring standing for an abstract dispute that the parties averred was "imminent." *Enzo*, 134 F.3d at 1093. The difference between the present case and *Enzo* is that Bushnell, Inc. is not averring that its rights in the '259 Patent *are imminent*, but rather it *presently* has all the rights it needs to bring the infringement litigation. Additionally, and as noted above, the *Randolph* court specifically dismissed the argument made by Defendants with respect to *Enzo*. Notably, the Defendants do not even mention *Randolph* in their reply brief.

Finally, Defendants argue that the May 7th Assignment's provision granting Bushnell, Inc. the right to sue for past damages makes the Assignment *nunc pro tunc*. (D.N. 59, pp. 8-9). This is a completely illogical argument without any support in the patent jurisprudence. Including the right

11

to sue for past damages is a very common provision in patent assignments and is the well-known exception to the general rule that the party asserting infringement must have legal title to the patent during the period of infringement. *See Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1579, n.7 (Fed. Cir. 1991) ("The exception . . . is where the assignment of a patent is coupled with an assignment of a right of action for past infringements.") (and *citing cases*). If every assignment that included this provision was a *nunc pro tunc* assignment, then no patent owner who obtained the patent through assignment would be able to sue for infringement unless it owned the patent during the time of infringement. This is certainly not the law, contrary to Defendants' assertions otherwise (D.N. 59, p. 8). *Id.*

### C. The Security Interests Listed on the Patent Office Website Do Not Affect Bushnell, Inc.'s Ownership in the '259 Patent.

Bushnell, Inc. supplied in its Opposition to the Motion to Dismiss (D.N. 50) all the transfer documents relevant to the '259 Patent. Regardless, Defendants question whether other entities in the Bushnell family have any interest in the '259 Patent. Their expressed concern is based on the chain of title listed on the Patent Office website. The security interest documents, which are available from the Patent Office, show that all the entities in the Bushnell family, of which there are many, executed one Patent Security Agreement. (Declaration of Jennifer C. Bailey, Ex. A, Patent Security Agreements). Each Bushnell entity was a grantor of a security interest in any patent property it owned. Therefore, the reason for multiple entities appearing to grant a security interest for the '259 Patent on the Patent Office website is because an omnibus Patent Security Agreement was executed by all Bushnell entities. This Patent Security Agreement does not affect Bushnell, Inc.'s ownership in the '259 Patent.

## V. CONCLUSION

For the forgoing reasons, Plaintiffs request leave to file its First Amended Complaint and denial of Defendants' Motion to Dismiss.

Respectfully Submitted,

Dated: June 9, 2009

/s/ Jennifer C. Bailey
Scott R. Brown (KS Bar No. 23395)
Jennifer C. Bailey (KS Bar No. 23446)
Matthew B. Walters (KS Bar No. 23514)
HOVEY WILLIAMS LLP
10801 Mastin Boulevard, Suite 1000
84 Corporate Woods
Overland Park, Kansas 66210
Tel.   913-647-9050
Fax   913-647-9057
srb@hoveywilliams.com
jcb@hoveywilliams.com
mbw@hoveywilliams.com

ATTORNEYS FOR PLAINTIFFS
BUSHNELL INC. AND
LASER TECHNOLOGY, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of June 2009, I electronically filed the foregoing *Plaintiffs' Reply to Its Motion for Leave to File a First Amended Complaint* with the Clerk of the Court using the CM / ECF system which sent notification of such filing to the following:

J. Michael Huget
Deborah J. Swedlow
Zachary v. Moen
BUTZEL LONG P.C.
350 S. Main Street, Suite 300
Ann Arbor, Michigan 48104

Scott C. Nehrbass
FOULSTON SIEFKIN LLP
9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, Kansas 66210

ATTORNEYS FOR DEFENDANTS THE BRUNTON COMPANY, LS GLOBAL LLC D/B/A I-ON OPTICS, AND LANSHUO PHOTOELECTRIC SCIENCE AND TECHNOLOGY CO. LTD.

/s/ Jennifer C. Bailey