# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

BUSHNELL, Inc., et al.,            )
                                  )
                  **Plaintiffs,**    )
v.                               )        **CIVIL ACTION**
                                    )
**THE BRUNTON COMPANY, et al.,**    )        **No. 09-cv-2009 KHV/JPO**
                                    )
                  **Defendants.**    )
_____)

## <u>NUNC PRO TUNC MEMORANDUM AND ORDER</u>

Under 35 U.S.C. § 101 et seq., Bushnell, Inc. ("Bushnell") and Laser Technology, Inc. ("LTI") bring suit against The Brunton Company, Lanshuo Photoelectric Science and Technology Co. Ltd. and LS Global LLC d/b/a I-On Optics (collectively "defendants") for infringement of five U.S. patents: LTI patent Nos. 5,612,779, 5,652,651, 6,057,910 and 6,226,077 and Bushnell patent No. 5,926,259 (hereafter referred to as the "'259 patent").[1]   Plaintiffs seek preliminary and permanent injunctive relief, monetary damages, costs and attorneys' fees under 35 U.S.C. §§ 283-285. <u>Complaint</u> (Doc. #1) filed January 7, 2009 at 15.  Defendants allege that the patents are invalid and are not infringed, and seek declaratory relief, costs and attorneys' fees.   <u>The Brunton Company's, LS Global LLC's, And Lanshuo Photoelectric Science And Technology Co.'s Answer, Affirmative Defenses, And Counterclaims</u> (Doc. #34) filed April 27, 2009 at 31.

This matter comes before the Court on <u>Plaintiffs' Motion For Preliminary Injunction</u> (Doc. #16) filed April 6, 2009, <u>Defendants' Motion To Dismiss Plaintiffs' Complaint</u> (Doc. #33)

---

[1]      The complaint originally sued American Technologies Network Corp. ("ATN") and Sellmark Corporation.  On March 16, 2009, the Court dismissed ATN pursuant to a stipulation of the parties.  Plaintiffs voluntarily dismissed Sellmark on June 15, 2009.  Plaintiffs seek leave to amend their complaint to remove ATN as a defendant.   As noted, the Court has already dismissed ATN and this aspect of plaintiffs' motion to amend is therefore moot.

filed April 27, 2009 and <u>Plaintiffs' Motion For Leave To File Their First Amended Complaint</u> (Doc. #52) filed May 11, 2009.  Defendants argue that (1) the Court lacks subject matter jurisdiction because plaintiffs lack constitutional and prudential standing to sue for infringement and (2) plaintiffs have failed to join a required party under Rule 19, Fed. R. Civ. P.  Plaintiffs seek leave to amend to cure the alleged defects.

For reasons set forth below, the Court finds that LTI and Bushnell have constitutional standing but not prudential standing to sue for infringement of the LTI patents,[2] and that Bushnell lacks both constitutional and prudential standing to sue for infringement of the '259 patent.[3]  The Court finds that Kama-Tech (HK) Limited, which co-owns the four LTI patents, cannot be involuntarily joined pursuant to Rule 19, Fed. R. Civ. P.  Absent Kama-Tech, the Court dismisses plaintiffs' claims under the LTI patents.  Because the Court finds that the proposed amended complaint adequately alleges that Bushnell has constitutional and prudential standing to sue for infringement of the '259 patent, it in part sustains plaintiffs' motion to amend.  Finally, the Court overrules plaintiffs' motion for a preliminary injunction as moot.

### Factual Background

As noted, Bushnell and LTI filed suit against Brunton, Lanshuo and I-On on January 7, 2009, alleging infringement of four patents co-owned by LTI and one patent owned by Bushnell.

A.      LTI Patents

1.      Standing of LTI

Plaintiffs allege that pursuant to an agreement between LTI and Kama-Tech, which co-owns the LTI patents, LTI has the right to sue for infringement of the LTI patents without joining Kama-

---

[2]      Defendants do not allege that LTI lacks constitutional standing.

[3]      LTI does not sue on the '259 patent.

Tech.  Plaintiffs cite a pre-suit agreement between LTI and Kama-Tech, dated January 6, 2009, which provides as follows:

> KAMA-TECH hereby waives all rights to pursue or participate in . . . litigation involving one or more of the [LTI] patents and one or more of the [defendants in this suit] and hereby agrees to be bound by any judgments relating to said litigation, and hereby agrees to not license any of the Laser Range Finder Patents to any of the Third Parties.  KAMA-TECH waives no rights to the Laser Range Finder Patents or any other LTI patents owned by it, however, except as provided herein.

Exhibit 3 to Motion To Dismiss (Doc. # 38-3) ("Kama-Tech Waiver").

2.      Standing of Bushnell

The complaint alleges that Bushnell is a field restricted exclusive licensee of the LTI patents.[4]  Complaint (Doc. #1) at 3, 6, 10, 13.  Bushnell contends that it acquired its license through an agreement dated September 14, 2004 between LTI, Kamakura Koki Co., Ltd. and Bushnell Performance Optics.  Under the agreement, LTI and Kamakura granted Bushnell Performance Optics an exclusive license under the LTI patents and "any applicable KAMAKURA Intellectual Property" to make and sell for outdoor recreational and sport uses products that retail for $400 or less.  Doc. #38-4 at 1, 3.  Kamakura agreed to exclusively design and manufacture products for LTI and Bushnell Performance Optics in that field.  On November 17, 2005, Bushnell Performance Optics changed its name to Bushnell, Inc. (plaintiff in this case).

On May 7, 2009, LTI, Kamakura, Kama-Tech and Bushnell executed an amended license agreement to reflect that on March 10, 2004, LTI had assigned Kama-Tech (not Kamakura) an

---

[4]      A field restricted exclusive licensee, often termed a "field of use" exclusive licensee, is one who has exclusive patent rights in a "field," i.e. a subset of the patented subject matter.  See Int'l Gamco, Inc. v. Multimedia Games, Inc., 504 F.3d 1273, 1277-78 (Fed. Cir. 2007).  Unlike an exclusive territorial license, which divides the patent rights by geographical bounds, an exclusive field of use license divides the scope of the patent rights by subject matter.  Id. at 1278, 81.

undivided half interest in the LTI patents.[5]   See Amendment to the Exclusivity Agreement of September 14, 2004 ("Amendment to Agreement"), attached as Exhibit C to plaintiffs' Motion To Amend (Doc. #54-4).   The amendment gave Kama-Tech the same rights and obligations as Kamakura in the original agreement, i.e. it provided that Kama-Tech would exclusively design and manufacture products in the field for Bushnell and granted Bushnell an exclusive license under the LTI patents.  Id.  The amendment also granted Bushnell the right to seek damages for past and future infringement of the LTI patents.  Id.

B.   Bushnell's '259 Patent

Plaintiffs allege that Bushnell is the sole owner of the '259 patent.  Complaint (Doc. #1) at 8. According to the United States Patent and Trademark Office ("USPTO") and the face of the patent, however, Stephen Bamberger and Jeremy Dunne assigned the '259 patent to Bushnell Corporation, a wholly owned subsidiary of Bushnell.   On November 17, 2005, Bushnell Corporation changed its name to Bushnell Holdings, Inc.[6]  Ex. C attached to Plaintiff's Opposition ( Doc. #51-4) filed May 11, 2009.  On May 7, 2009, after plaintiffs filed suit, Bushnell Holdings, Inc. assigned to Bushnell its entire interest in the '259 patent, including the right to sue for past infringement. Assignment, attached as Exhibit D to Plaintiffs' Opposition (Doc. #51-5) filed May 11, 2009.

## Subject Matter Jurisdiction

Defendants claim that LTI lacks prudential standing to sue and that Bushnell lacks

---

[5]       In plaintiffs' response to defendants' motion to dismiss and in the proposed amended complaint, plaintiffs allege that after they filed suit, they discovered that Kama-Tech, rather than its related entity, Kamakura, was the co-owner of the LTI patents and that the parties to the license agreement and Kama-Tech had performed as if Kama-Tech had been a party rather than Kamakura. On May 7, 2009, the original parties and Kama-Tech executed an amendment to the license agreement which substituted Kama-Tech for Kamakura.

[6]       Bushnell Holdings, Inc. is a wholly owned subsidiary of Bushnell, Inc.

constitutional and prudential standing to sue on the LTI patents.  Defendants also assert that LTI and Bushnell lack constitutional and prudential standing to sue for infringement of the '259 patent.

Standing to sue is jurisdictional.  Aspex Eyewear, Inc. v. Miracle Optics, Inc., 434 F.3d 1336, 1339 (Fed. Cir. 2006).  The Court may exercise jurisdiction only when specifically authorized to do so, see Castaneda v. INS, 23 F.3d 1576, 1580 (10th Cir. 1994), and must "dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." Scheideman v. Shawnee County Bd. of County Comm'rs, 895 F. Supp. 279, 280 (D. Kan. 1995) (citing Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974)); Fed. R. Civ. P. 12(h)(3).  Because federal courts are courts of limited jurisdiction, the law imposes a presumption against their jurisdiction.  Marcus v. Kan. Dep't of Revenue, 170 F.3d 1305, 1309 (10th Cir. 1999).  If defendants challenge federal jurisdiction, plaintiffs bear the burden of showing that jurisdiction is proper.  See Jensen v. Johnson County Youth Baseball League, 838 F. Supp. 1437, 1439-40 (D. Kan. 1993).

Motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) generally take two forms: facial attacks on the complaint and factual attacks on the accuracy of the allegations in the complaint.  See Holt v. United States, 46 F.3d 1000, 1002-03 (10th Cir. 1995).  A facial attack questions the sufficiency of the complaint, see id. at 1003, and requires the Court to determine whether the complaint contains sufficient jurisdictional facts to state a claim which  is "plausible on its face" and raises a right to relief "above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).[7]  A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do, and a complaint is not sufficient if it tenders naked

---

[7]        "Plausibility" in this context refers to the scope of the allegations in a complaint: "if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  Robbins v. Oklahoma, 519 F.3d 1242, 1247-48 (10th Cir. 2008) (quoting Twombly, 550 U.S. at 570).

assertions devoid of further factual enhancement.  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 555, 557).  Here, defendants make a factual attack on the accuracy of the jurisdictional allegations.  Where the challenge to subject matter jurisdiction is factual, the Court must resolve factual disputes to determine if it has jurisdiction.  See Holt, 46 F.3d at 1002-03.

Constitutional standing in patent infringement cases is governed by patent statutes.  Morrow v. Microsoft Corp., 499 F.3d 1332, 1337-39 (Fed. Cir. 2007).  To sue for patent infringement, plaintiffs must have both constitutional and prudential standing – each plaintiff must have constitutional standing, and plaintiffs individually or together must have prudential standing with respect to each patent in suit.  See id. at 1339-41.  A patent ownership interest is required for constitutional standing and joinder of all co-owners (i.e. complete ownership on plaintiffs' side) is required for prudential standing.  See id. at 1339-40; Israel Bio-Eng'g Project v. Amgen, Inc., 475 F.3d 1256, 1262, 1264 (Fed. Cir. 2007); Ethicon, Inc. v. United States Surgical Corp., 135 F.3d 1456, 1468 (Fed. Cir. 1998); Ortho-Pharm Corp. v. Genetics Inst., Inc., 52 F.3d 1026, 1031 (Fed. Cir. 1995) (for constitutional standing, economic injury not enough; licensee must hold some patent rights).

I.      Constitutional Standing

As noted, defendants claim that Bushnell lacks constitutional standing to sue on the LTI patents and that LTI and Bushnell lack constitutional standing to sue on the '259 patent.  The complaint does not allege that LTI has any interest in the '259 patent and LTI does not sue under the '259 patent or claim any interest in it.  Defendants' motion to dismiss LTI's claims on the '259 patent is therefore moot.

The essence of a patent is the legal right to exclude others from making, using, selling or offering to sell the patented invention in the United States, or importing the invention into the United

States.  35 U.S.C. §§ 154, 271.  The patent statutes give rise to the right to sue for patent infringement.[8]  Morrow, 499 F.3d at 1339.  Standing to sue for patent infringement derives from 35 U.S.C. § 281, which provides that a "patentee" can sue for patent infringement.  Int'l Gamco, 504 F.3d at 1276; see also Morrow, 499 F.3d at 1339.  The term "patentee" includes the patentee's successors in title.  35 U.S.C. § 100(d) (2006); Int'l Gamco, 504 F.3d at 1276. Constitutional injury occurs when a party violates exclusionary rights under the patent and the patentee suffers redressable legal injury.  Morrow, 499 F.3d at 1340. A party who holds exclusionary rights under the patent, whether or not it holds all rights or all substantial rights to the patent, suffers legal injury from infringement and therefore has constitutional standing.[9]  Id.

A.    LTI Patents

Plaintiffs allege that as an exclusive field of use licensee under the LTI patents Bushnell has constitutional standing to sue for infringement of those patents.  Defendants claim that Bushnell lacks constitutional standing because (1) it is not a party to the agreement which purports to grant it an exclusive field of use license and (2) LTI retains the right to sue for infringement of the LTI patents, so Bushnell is a mere licensee without the right to sue.  Motion To Dismiss (Doc. #38) at 4.  Both sides have introduced evidence on this issue, so the Court must resolve any factual dispute with regard to subject matter jurisdiction.  See Holt, 46 F.3d at 1002-03.

---

[8]    Federal Circuit law governs substantive patent law and procedural issues bearing an essential relationship to patent law.  See Lab. Corp. of Am. Holdings v. Chiron Corp., 384 F.3d 1326, 1330 (Fed. Cir. 2004).

[9]    A party who holds fewer than all rights or all substantial rights (such as an exclusive licensee) also suffers legal injury when another party violates those rights and therefore has constitutional standing. Id.; Propat Int'l Corp. v. RPost, Inc., 473 F.3d 1187, 1193 (Fed. Cir. 2007). By contrast, a bare or non-exclusive licensee, i.e. a party with only a covenant not to sue, lacks constitutional standing. Id. at 1187. The substance of the rights, not the labels or characterizations used, determine whether one is an exclusive licensee, a bare licensee or holds all rights or all substantial rights to a patent. Morrow, 499 F.3d at 1340 n.7.

As noted, on September 14, 2004, LTI and Kamakura granted Bushnell Performance Optics an exclusive license under the LTI patents to make and sell outdoor recreational and sport products that retail for $400 or less.  On November 17, 2005, Bushnell Performance Optics changed its name to Bushnell.  On May 7, 2009, LTI, Kamakura, Kama-Tech and Bushnell executed an amended license agreement which reflected that on March 10, 2004, LTI had assigned Kama-Tech an undivided half interest in the LTI patents.  The amendment also granted Bushnell an exclusive license under the LTI patents and the right to sue for past and future infringement of those patents.

Bushnell asserts that even though Kama-Tech was not a signatory to the original license agreement, Kama-Tech and the parties to the original license agreement have conducted themselves as if it were.  Bushnell asserts that as of September 14, 2004, Kama-Tech granted it an exclusive field of use license under the LTI patents.  See Atmel Corp. v. Authentec, Inc., 490 F. Supp. 2d 1052, 1054-55 (N.D. Cal. 2007) (license, as opposed to assignment, need not be in writing but may be oral or implied); see also Steelcase Inc. v. Smart Techs. Inc., 336 F. Supp. 2d 714, 718 (W.D. Mich. 2004).  On this record, the Court concludes that Bushnell Performance Optics held an exclusive field of use license for the LTI patents on November 17, 2005 when it changed its name to Bushnell.  The exclusive license survived the name change, so that when Bushnell filed suit on January 7, 2009, it had sufficient interest in the LTI patents to establish constitutional standing to sue for infringement of the LTI patents.  See Int'l Gamco, 504 F.3d at 1279 (implicitly recognizing constitutional standing for exclusive field of use licensee).

Plaintiffs seek to amend their complaint to identify all parties to the amended agreement which granted Bushnell an exclusive "field of use" license on the LTI patents.  As set forth above, the record evidence establishes that Bushnell has an exclusive field of use license which is sufficient to establish constitutional standing to sue for infringement of the LTI patents.  The Court therefore

overrules as moot plaintiffs' motion to amend on this point.

   B.  The '259 patent

   Plaintiffs allege that as owner of the '259 patent, Bushnell has constitutional standing to sue for infringement. Defendants argue that Bushnell lacks constitutional standing, however, because the USPTO database and the face of the patent show that Bushnell Corporation owns the '259 patent. By introducing evidence, defendants have made a factual attack on Bushnell's claim of ownership, and plaintiffs have responded with further evidence. The Court therefore resolves this factual dispute. See Holt, 46 F.3d at 1002-03.

   As noted, Bamberger and Dunne assigned the '259 patent to Bushnell Corporation, a wholly owned subsidiary of Bushnell. On November 17, 2005, Bushnell Corporation changed its name to Bushnell Holdings, Inc. but remained a wholly-owned subsidiary of Bushnell. On May 7, 2009 – four months after plaintiffs filed suit – Bushnell Holdings, Inc. assigned its entire right, title and interest in the '259 patent, including the right to sue for past infringement, to Bushnell. Defendants correctly claim that Bushnell had no interest in the '259 patent when it filed suit, and that Bushnell Corporation – which did own the patent – did not join as plaintiff.

   Plaintiffs essentially admit that Bushnell did not own the '259 patent when it filed suit on January 7, 2009. A party must have standing to bring a patent infringement suit at the time it is brought. See Sicom Sys., Ltd. v. Agilent Techs., Inc., 427 F.3d 971, 975-76 (Fed. Cir. 2005). Here, when Bushnell filed suit, it did not have a right to sue for past infringement or any interest in the '259 patent.[10] It therefore lacked constitutional standing to sue for infringement of the '259 patent.

---

   [10]  A parent corporation which exclusively uses the patent of a wholly owned subsidiary and has the right to enforce that patent may have constitutional standing as an exclusive licensee, even without a written license agreement. See Atmel, 490 F. Supp. 2d at 1054-55; Steelcase, 336 F. Supp. 2d at 718; Mi-Jack Products, Inc. v. The Taylor Group, Inc., No. 96-C-7850, 1997 WL

(continued...)

Bushnell asserts that it can cure its lack of standing by amending the complaint to allege that it now owns the '259 patent, citing Randolph-Rand Corp. v. Shafmaster Co., No. Civ. 97-44-M, 1999 WL 814367 (D.N.H. April 8, 1999).  In Randolph-Rand, defendant moved for partial summary judgment, asserting that plaintiff lacked constitutional and prudential standing at the inception of the patent infringement suit.  The district court overruled the motion, finding that plaintiff had standing as of the date of the amended complaint, and that forcing plaintiff to file a new suit would be wasteful and confusing.  Defendants counter that although the result in Randolph-Rand may seem logical from a practical standpoint, it is contrary to Federal Circuit law which holds that if plaintiff lacks constitutional standing at the inception of the suit, a nunc pro tunc assignment or license cannot cure lack of constitutional standing.  See, e.g., Enzo APA & Son, Inc., v. Geopag, A.G., 134 F.3d 1090, 1093 (Fed. Cir. 1998).  The Federal Circuit has set forth the rationale for this rule as follows:

> As a general matter, parties should possess rights before seeking to have them vindicated in court. Allowing a subsequent assignment to automatically cure a standing defect would unjustifiably expand the number of people who are statutorily authorized to sue. Parties could justify the premature initiation of an action by averring to the court that their standing through assignment is imminent.  Permitting non-owners and licensees the right to sue, so long as they eventually obtain the rights they seek to have redressed, would enmesh the judiciary in abstract disputes, risk multiple litigation, and provide incentives for parties to obtain assignment in order to expand their arsenal and the scope of litigation.  Inevitably, delay and expense would be the order of the day.

Enzo, 134 F.3d at 1093-94 (quoting Procter & Gamble Co. v. Paragon Trade Brands, Inc., 917 F.Supp. 305, 310 (D. Del.1995)).

---

[10](...continued)
441796, at *8 (N.D. Ill. July 30, 1997); see also Ricoh Co. v. Nashua Corp., 947 F. Supp. 21, 22, 24 (D.N.H. 1996) (plaintiff's wholly owned "grandchild" subsidiary had implied exclusive license, and therefore standing).  Mere ownership of the subsidiary, however, does not confer standing on the parent or grandparent to sue for infringement of the subsidiary's patents.  See Steelcase, 336 F. Supp. 2d at 718.

The proposed amendment would not give Bushnell standing retroactive to the date of the original complaint. The question remains whether the proposed amended complaint which alleges standing as of now would be sufficient. The Court agrees with <u>Randolph-Rand</u> that forcing plaintiff to file a new suit would be a waste of resources. Indeed, dismissal at this point would result in the type of "delay and expense" which <u>Enzo</u> cautioned against. <u>See</u> <u>Gipson v. Mattox</u>, 511 F. Supp.2d 1182, 1192 (S.D. Ala. 2007) (where one plaintiff had standing at beginning of suit, refusing to read <u>Enzo</u> as requiring dismissal where plaintiffs corrected "technical glitch" in standing and dismissal would result in needless and wasteful delay and expenditure of judicial resources); <u>Positive Tech., Inc. v. LG Display Co., Ltd.</u>, No. 2:07 CV 67, 2008 WL 4425372, at *3 (E.D. Tex. Sept. 24, 2008) (allowing plaintiff to remedy prudential standing defect by nunc pro tunc assignment where plaintiff had 75 per cent ownership of patents at beginning of suit). The Court therefore finds that plaintiffs' motion to amend should be sustained with the caveat that any damages or other right to relief under the '259 patent will run from the date of the amended complaint.

II.  <u>Prudential Standing To Sue</u>

A co-owner of a patent cannot bring suit for infringement without joining all co-owners. <u>Israel Bio-Eng'g</u>, 475 F.3d at 1264-65. This is the essence of prudential standing to sue for patent infringement. <u>Propat Int'l.</u>, 473 F.3d at 1193. All co-owners must ordinarily consent to join as plaintiffs in an infringement suit.[11]  <u>Ethicon</u>, 135 F.3d at 1467-68; <u>Israel Bio-Eng'g.</u>, 475 F.3d at

---

[11]      This requirement protects three primary interests: (1) the interest of a co-owner in being able to license to third parties without harassing suits by other co-owners of the patent; (2) the interest of a co-owner in avoiding the estoppel effect of a judgment which declares the patent invalid in a suit in which he or she did not participate and (3) the interest of a defendant in avoiding multiple suits concerning infringement of the same patent. <u>Willingham v. Lawton</u>, 555 F.2d 1340, 1344 (6th Cir. 1977). A co-owner can refuse to join an action for infringement, so co-owners are at the mercy of each other. <u>See</u> <u>Ethicon</u>, 135 F.3d at 1468 (citing <u>Willingham</u>, 555 F.2d at 1344). By refusing to voluntarily join suit, one co-owner can prevent the other co-owners from suing. Also, by granting
(continued...)

1264.  The presence of all owners is necessary to enable the alleged infringer to respond in one action to all claims of infringement, and also to give jurisdiction under the patent laws.  See Indep. Wireless Tel. Co. v. Radio Corp. of Am., 269 U.S. 459, 468 (1926).  Therefore all plaintiffs must have between them full ownership of the patent.  Cilco, Inc. v. Copeland Intralenses, Inc., 614 F. Supp. 431, 433-34 (S.D.N.Y. 1985); see 35 U.S.C. §§ 262, 281.  Licensees with fewer rights in the patent may only sue with and in the name of the patent owner.[12]  Cilco, 614 F. Supp. at 433-34. Traditionally, when a licensee sues for infringement, the patent holder is a necessary party because it is still the real party in interest with respect to patent validity.  Refac Int'l, Ltd. v. Mastercard Int'l, F.W., 758 F. Supp. 152, 157 (S.D.N.Y. 1991) (quoting Erbamont Inc. v. Cetus Corp., 720 F. Supp. 387, 393 (D. Del. 1989)).

---

[11](...continued)
a license to a prospective or already sued infringement defendant, a co-owner can effectively deny co-owners the ability to collect damages for infringement and secure injunctive relief against future infringement.  Schering Corp. v. Roussel-UCLAF SA, 104 F.3d 341, 345-46 (Fed. Cir. 1997).

[12]      Although an exclusive licensee may have standing, the patent owner generally must join in the suit unless it has assigned "all substantial rights under the patent."  See Indep. Wireless, 269 U.S. at 468; Prima Tek II L.L.C. v. A-Roo Co., 222 F.3d 1372, 1377 (Fed. Cir. 2000).  Where "all substantial rights under the patent" have been assigned, the assignee may be deemed the effective "patentee" under 35 U.S.C. § 281 and thus will have standing to maintain an infringement suit in its own name.  See Textile Prods., Inc. v. Mead Corp., 134 F.3d 1481, 1484 (Fed. Cir. 1998); Ortho Pharm., 52 F.3d at 1030; Vaupel Textilmaschinen KG v. Meccanica Euro Italia SPA, 944 F.2d 870, 875 (Fed. Cir. 1991).  To be deemed the effective "patentee" or "virtual assignee," however, the license arrangement conferring "all substantial rights" must be in writing and should resemble an assignment in both form and substance.  See 35 U.S.C. § 261; Enzo, 134 F.3d at 1093.  Where the exclusive license is oral, implied or nunc pro tunc executed after suit is brought, the holder of patent title must be joined in order to confer standing.  Enzo, 134 F.3d at 1093-94.  To have "all substantial rights under the patent," the exclusive licensee must have at least the right to make, use and sell the patented invention, the full right to exclude others from making, using and selling the patented invention in the exclusive territory, i.e., the right to sue for infringement, the right to sub-license its rights under the license and the right to transfer its rights under the license.  See Propat, 473 F.3d at 1191-92; Aspex Eyewear, 434 F.3d at 1341-43; Sicom, 427 F.3d at 979; Prima Tek II, 222 F.3d at 1379-80.  A definite term of license with a fixed termination date, for less than the term of the patent, does not transfer "all substantial rights" and is therefore not a "virtual assignment." See Aspex Eyewear, 434 F.3d at 1342-43.

As noted, defendants claim that Bushnell and LTI lack prudential standing to sue on the LTI and the '259 patents.  Defendants argue that as a 50 per cent co-owner, LTI does not have all substantial rights in the LTI patents and cannot sue for infringement without Kama-Tech; that while Kama-Tech has expressly stated that it does not want to participate in this litigation, it has not waived any rights to the LTI patents except the right to participate in this lawsuit; and that because Kama-Tech has not transferred all substantial rights under the LTI patents to LTI or Bushnell, plaintiffs lack prudential standing.  Plaintiffs respond that Kama-Tech has agreed to be bound by this litigation and that LTI as co-owner and Bushnell as an exclusive field of use licensee can together sue for infringement of the LTI patents.[13]

Preliminarily, the Court does not address defendants' argument with respect to the '259 patent.  It is moot because the '259 patent has not been owned by more than one entity, so prudential standing concerns about joinder of co-owners is not an issue.

As noted, without the voluntary joinder of all co-owners, a co-owner or exclusive licensee lacks prudential standing to sue for infringement.  Israel Bio-Eng'g, 475 F.3d at 1264-65 (rule described as a "steel trap").[14]  LTI and Bushnell do not claim that they have sufficient rights under

---

[13]     An exclusive field of use license does not confer "all substantial rights under the patent."  See Int'l Gamco, 504 F.3d at 1279.

[14]     Courts have recognized exceptions to the voluntary joinder rule.  First, when a co-owner contractually waives his right to refuse to join suit, other co-owners may force the co-owner to join a suit against infringers.  Ethicon, 135 F.3d at 1468 n.9 (citing Willingham, 555 F.2d at 1344-45).  Second, when a patent owner has granted an exclusive license, the owner stands in a position of trust to the licensee and must allow the licensee to sue in the owner's name.  Id. (citing Indep. Wireless, 269 U.S. at 469).  Other exceptions exist for extraordinary circumstances "as where the patentee is the infringer, and cannot sue himself," or when "necessary to prevent an absolute failure of justice."  Ortho Pharm., 52 F.3d at 1030 (citing and quoting Waterman v. Mackenzie, 138 U.S. 252, 255 (1891)).  Thus, where one co-owner has given other co-owners a unilateral right to sue for infringement or to bring suit in his "sole discretion," the co-owner has waived the right to refuse to join in the action and may be involuntarily joined.  Willingham, 555 F.2d at 1345.  The rationale (continued...)

-13-

the LTI patents to sue for infringement without Kama-Tech.  They therefore lack prudential standing unless Kama-Tech is joined – voluntarily or involuntarily.

Plaintiffs concede that Kama-Tech does not want to participate and will not voluntarily join suit.  Kama-Tech Waiver (Doc. #38-3).  Therefore the question is whether Kama-Tech should be involuntarily joined.  Plaintiffs do not claim that Kama-Tech has waived its right to refuse to join suit.  They merely claim that Kama-Tech has waived its right to sue these defendants under the LTI patents.  Plaintiffs argue that the Kama-Tech waiver removes the possibility of multiple suits for infringement of the same patents, see LP Matthews, 458 F. Supp.2d at 215, and that if the co-owner waives or releases future infringement litigation, the other co-owner(s) and exclusive licensees, if any, have standing under Rules 12(b)(1), 12(b)(7) and 19.  In support of their position, plaintiffs cite four cases: IpVenture, Inc. v. ProStar Computer, Inc., 503 F.3d 1324 (Fed. Cir. 2007); LP Matthews LLC v. Bath & Body Works, Inc., 458 F. Supp. 2d 211 (D. Del. 2006); Synopsys, Inc. v. Magma Design Automation, Inc., No. C-04-3923 MMC, 2006 WL 825277 (N.D. Cal. March 30, 2006); and Amgen, Inc. v. F. Hoffman-La Roche Ltd., 456 F. Supp. 2d 267 (D. Mass. 2006).  None of these cases, however, compel a conclusion that the Kama-Tech waiver is a legally sufficient substitute for its joinder as a plaintiff in this suit.

Federal Circuit precedent is clear that generally, all owners of a patent must be joined – voluntarily or involuntarily – in a suit for infringement.  The only relevant exception is that when

---

[14](...continued)
for the requirement of involuntary joinder is to protect defendants from repetitive suits.  See id.

The only patent case in which this Court could find involuntary joinder in the absence of a waiver is Katz v. Lear Seigler, Inc., 909 F.2d 1459 (Fed. Cir. 1990), which involved a putative patent owner and not a owner of record.  In Katz, the threshold question was whether the plaintiff or the involuntarily joined party was the true owner because the inventor had allegedly executed agreements with both at different times.  909 F.2d at 1462.

"all substantial rights under the patent" have been assigned prior to suit, the assignee is considered a virtual owner and can sue in its own name without joinder of the title holder(s).  See Textile Prods., 134 F.3d at 1484; Ortho Pharm, 52 F.3d at 1030; Vaupel, 944 F.2d at 875.  In that regard, the assignment must include the rights to make, use and vend the invention, to exclude others from making, using and vending it, to license or sublicense the rights under the patent and to transfer the rights to another.  See Propat Int'l, 473 F.3d at 1191-92; Aspex Eyewear, 434 F.3d at 1341-43; Sicom Sys., 427 F.3d at 979; Prima Tek II, 222 F.3d at 1379-80.  Kama-Tech has not assigned all such rights to the patents, however, and plaintiffs do not claim that individually or together they hold "all substantial rights."  Therefore they do not fall within an established exception to the requirement that all owners join in a patent infringement suit.

Plaintiffs essentially ask this Court to create a new exception to the joinder rule: that joinder is not necessary where a co-owner waives the right to participate in a given infringement suit, agrees to be bound by the judgment and agrees not to license the patents to the alleged infringers.  The Federal Circuit has not recognized such an exception, and in fact it has expressly stated that a patent owner's agreement to be bound by judgments against an exclusive licensee does not necessarily resolve the issue of standing because "[s]tanding to sue for infringement depends *entirely* on the putative plaintiff's proprietary interest in the patent, not on any contractual arrangements among the parties regarding who may sue and who will be bound by judgments."[15]  See Prima Tek II, 222 F.3d

---

[15]    Plaintiffs argue that the law of the Federal Circuit does not apply to a district court ruling on a motion to dismiss.  Plaintiffs' Reply (Doc. #67) at 1.  They quote Toxgon Corp. v. BNFL, Inc., 312 F.3d 1379, 1380-81 (Fed. Cir. 2002), and M.J. Madey v. Duke Univ., 307 F.3d 1351, 1358 (Fed. Cir. 2002), for the proposition that "for purely procedural issues in patent cases, such as dismissal of a complaint for lack of subject matter jurisdiction, law of the regional circuit applies."  Plaintiffs' Reply (Doc. #67) at 1.  In Madey, the Federal Circuit held that regional circuit law applies to procedural issues that do not pertain to patent law.  307 F.3d at 1358; see also Lab. Corp., 384 F.3d at 1330 (Federal Circuit law controls procedural issues which  bear "essential
(continued...)

at 1381 (emphasis added).  A contract cannot change the statutory requirement for suit to be brought by the patentee.  <u>Ortho Pharm</u>, 52 F.3d at 1034.  Joinder of all owners is essential – not only to "enable the alleged infringer to respond in one action to all claims of infringement," but also "to give jurisdiction under the patent laws."  <u>See</u> <u>Indep. Wireless</u>, 269 U.S. at 468.  The statutory requirement that only a patent owner may sue for infringement essentially means that only a person or persons with the "full" right to exclude can bring an infringement action.  35 U.S.C. § 281 ("A *patentee* shall have remedy by civil action for infringement of his patent.").  In this sense, "patentee" refers to complete ownership of the patent; if more than one person owns the patent, all of them together constitute the "patentee," rather than each being a "patentee" in his or her own right.  <u>See</u> <u>Israel Bio-Eng'g</u>, 475 F.3d at 1264-65.  Contractual arrangements between the co-owners or parties cannot change this requirement, which flows from statute.  <u>See</u> <u>Prima Tek II</u>, 222 F.3d at 1381; <u>Ortho Pharm</u>, 52 F.3d at 1034.

Here, except for the right to participate in this litigation, Kama-Tech has retained virtually all of its rights under the patent.  It still has the right to make, use and vend the inventions of the LTI patents, to exclude everyone except the parties in this case from practicing the LTI patents and (except in the "field of use" in which Bushnell is exclusively licensed) to license anyone except defendants to practice the patents.  Thus, without its joinder, plaintiffs do not represent the entire ownership of the patent or the full right to exclude.  They therefore lack prudential standing to sue without Kama-Tech.

---

[15](...continued)
relationship" to matters which statutes commit to exclusive Federal Circuit control or which clearly implicate jurisprudential responsibilities of the Federal Circuit).  Although dismissal for lack of subject matter jurisdiction is not a procedural question which is unique to patent law, <u>see</u> <u>Madey</u>, 307 F.3d at 1358, standing to sue for patent infringement flows from the patent statutes.  Subject matter jurisdiction therefore implicates Federal Circuit law on standing.

Since LTI and Bushnell had constitutional standing at the inception of this suit, they may attempt to cure this prudential standing defect.  See Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc., 248 F.3d 1333, 1349 (Fed. Cir. 2001); Mentor H/S, Inc. v. Medical Device Alliance, Inc., 240 F.3d 1016, 1019 (Fed. Cir. 2001); Atmel, 490 F. Supp. 2d at 1054.  As noted, when a co-owner contractually waives his right to refuse to join suit, other co-owners may force the co-owner to join a suit against infringers.  Willingham, 555 F.2d at 1344-45.  Plaintiffs in fact seek leave to join Kama-Tech as an involuntary plaintiff.  Defendants ask the Court to dismiss because plaintiffs did not join an indispensable party under Rule 19, Fed. R. Civ. P.

III.    Failure to Join Required Person Under Rule 19

The purpose of Rule 19 is to avoid incomplete relief or multiple suits arising from the same subject matter, and to ensure that a judgment will have a res judicata effect on the real parties in interest.  See Abbott Labs v. Diamedix Corp., 47 F.3d 1128, 1133 (Fed. Cir. 1995); Patterson Enters. v. Bridgestone/Firestone, Inc., 812 F. Supp. 1152 (D. Kan. 1993).  Rule 19 provides a mechanism for joining persons necessary for the just adjudication of a dispute, where feasible, and where it is not feasible to join such persons, for dismissing the case.  Blue Rhino Corp. v. Stockgrowers State Bank, 220 F.R.D. 369, 373 (D. Kan. 2004) (citing Salt Lake Tribune Pub. Co. v. AT&T Corp., 320 F.3d 1081, 1097 (10th Cir. 2003)).  Ordinarily, the party seeking dismissal bears the burden to prove that the absent party is a necessary party under Rule 19.  See Citizen Band Potowatomi Indian Tribe of Okla. v. Collier, 17 F.3d 1292, 1293 (10th Cir. 1994).  Although the law of joinder under Rule 19 places the burden on defendant to prove the nature of the interest of the absent person and the impairment of that interest if suit is decided in its absence, the patent law on joinder of co-owners – by making it a jurisdictional issue – places the burden on plaintiffs to show that that they have standing without joinder of the absent person.  See Aspex Eyewear, 434 F.3d at 1339; Citizen Band,

17 F.3d at 1292; <u>Jensen</u>, 838 F. Supp. at 1439-40.   Thus, substantive patent law informs and circumscribes the Court's Rule 19 analysis.

In deciding whether a person is indispensable under Rule 19(b), the Court applies a three-part analysis.[16]   <u>See</u> <u>Citizen Potawatomi Nation v. Norton</u>, 248 F.3d 993, 997 (10th Cir. 2001); <u>see also</u> <u>Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr.</u>, 94 F.3d 1407, 1411 (10th Cir. 1996).   First, the Court determines under Rule 19(a) whether the person is "necessary."   <u>Citizen Potawatomi</u>, 248 F.3d at 997.   This test is easily satisfied.   Under substantive patent law, failure to join a patent owner in an infringement suit is ordinarily a jurisdictional defect, and each patent co-owner is therefore a necessary party in an action for infringement unless the exclusive licensee has such substantial rights under the patent as to be a virtual assignee.   <u>See</u> <u>Israel Bio-Eng'g</u>, 475 F.3d at 1264-65.   Therefore, in this case, the absent co-owner is a necessary party.[17]   <u>See</u> <u>Indep. Wireless</u>, 269 U.S. at 468; <u>Aspex Eyewear</u>, 434 F.3d at 1339; <u>Israel Bio-Eng'g</u>, 475 F.3d at 1264-65.

Because Kama-Tech is a necessary party, the Court must determine whether joinder is feasible, <u>i.e.</u> whether it is subject to service of process and whether joinder will deprive the Court of subject matter jurisdiction.   <u>Citizen Potawatomi</u>, 248 F.3d at 997; <u>Salt Lake Tribune Pub. Co.</u> 320

---

[16]   At least one court has noted that this "necessary or indispensable" joinder analysis under Rule 19 is based on facts as of the current date (of analysis), rather than as of the date suit was filed, while the analysis of standing is based on facts as of the date suit was filed.   <u>See</u> <u>Procter & Gamble</u>, 917 F. Supp. at 312.   Other courts, including the Federal Circuit, have analyzed Rule 19 joinder based on facts as of the date suit was filed.   <u>See</u>, <u>e.g.</u>, <u>Aspex Eyewear</u>, 434 F.3d at 1344 (remanding case for district court to perform joinder analysis as of the date suit was filed).

[17]   In <u>Mentor H/S</u>, the Federal Circuit found on appeal and on its own motion (neither party had raised the issue) that the exclusive licensee did not have all substantial rights under the patent to bring suit by itself, and invited the plaintiff to file a motion under Fed. R. Civ. P. 21 to add the patent owner as party plaintiff.   240 F.3d at 1018.   The court noted that ordinarily the suit is dismissed when the plaintiff who brought suit is found to lack standing, but stated that Fed. R. Civ. P. 21 which allows district courts to add or drop parties at any stage "on such terms as are just," can be used at the appellate level under rare circumstances to correct jurisdictional defects.   <u>Id.</u>

F.3d 1097 (10th Cir. 2003).  Here, the record contains no evidence that Kama-Tech is subject to

service of process.  It therefore appears that joinder is not feasible.

 If a person is necessary but cannot be joined, the Court determines whether the person is

indispensable under Rule 19(b).  <u>Citizen Potawatomi</u>, 248 F.3d at 997.  To conclude that a person is

indispensable, the Court must find "in equity and good conscience" that the action should not

proceed in the person's absence.[18]  Rule 19(b), Fed. R. Civ. P.; <u>Sac & Fox Nation of Mo. v. Norton</u>,

240 F.3d 1250, 1259 (10th Cir. 2001).  Because patent co-owners have a right to refuse to join a suit

for infringement, unless they have waived that right by agreement with other co-owners or they

stand in a position of trust to a suing exclusive licensee, the Court should not involuntarily join such

co-owners under Rule 19(a)(2).  <u>See</u> <u>Ethicon</u>, 135 F.3d at 1468 n.9; <u>Willingham</u>, 555 F.2d at 1344-

45.  <u>But</u> <u>see</u> <u>IpVenture</u>, 503 F.3d at 1325 (dicta; when party with independent right to enforce patent

declines to join, it may be joined involuntarily); <u>Katz</u>, 909 F.2d at 1462 (upholding involuntary

joinder of alleged patent owner where patent ownership disputed); <u>Ethicon</u>, 135 F.3d at 1472

(dissenting opinion; co-owner's refusal to join suit no barrier to involuntary joinder under Rule 19).

---

  [18]  In making this determination, the Court balances the following factors:

   (1)  the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

   (2)  the extent to which any prejudice could be lessened or avoided by:
     (A) protective provisions in the judgment;
     (B) shaping the relief; or
     (C) other measures;

   (3)  whether a judgment rendered in the person's absence would be adequate; and

   (4)  whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder.

Rule 19(b), Fed. R. Civ. P.  The Court exercises discretion in determining the weight of each factor. <u>Thunder Basin Coal Co. v. Sw. Pub. Serv. Co.</u>, 104 F.3d 1205, 1211 (10th Cir. 1997).

Therefore, Kama-Tech is indispensable.  Apparently it is not subject to service and under federal patent law, it cannot be required to join under Rule 19.  The Court therefore finds that plaintiffs' claims for infringement of the LTI patents must be dismissed.

### Conclusion

**IT IS THEREFORE ORDERED** that <u>Defendants' Motion To Dismiss</u> (Doc. #33) filed April 27, 2009 be and hereby is **SUSTAINED**.

**IT IS FURTHER ORDERED** that plaintiffs' motion to amend be and hereby is **SUSTAINED in part and OVERRULED in part.**[19]  **Plaintiffs shall file their amended complaint on or before September 4, 2009.**

**IT IS FURTHER ORDERED** that <u>Plaintiffs' Motion For Preliminary Injunction</u> (Doc. #16) filed April 6, 2009 be and hereby is **OVERRULED** as moot.

Dated this 3rd day of September, 2009 at Kansas City, Kansas.

<u>s/Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge

---

[19]     As noted, plaintiffs seek leave to amend the complaint to (1) identify all parties to the agreement which granted Bushnell an exclusive field of use license on the LTI patents; (2) aver the changed ownership of the '259 patent and (3) remove ATN as a defendant.  As to the first proposed amendment, based on evidence outside the pleadings, the Court has already found that Bushnell has an exclusive field of use license sufficient to establish constitutional standing to sue for infringement of the LTI patents.  The motion to amend is therefore moot as to this point.  As to the second proposed amendment, the Court has found that Bushnell's acquisition of the '259 patent after it filed suit will provide constitutional standing from the date of the amended complaint.  The motion to amend is therefore sustained as to this point.  As to the third proposed amendment, the Court has previously dismissed all claims against ATN, and this proposed amendment is moot.